**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF WASHINGTON**

**AT SEATTLE**

---

**FINVARI, INC.,**

*Plaintiff,*

v.

**RIGID CONSTRUCTORS, LLC,**

*Defendant.*

Civil Action No. ______________

---

# COMPLAINT FOR EMERGENCY EQUITABLE RELIEF AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## PRELIMINARY STATEMENT

1. Plaintiff Finvari, Inc. ("Finvari") brings this action for emergency equitable relief to maintain the status quo pending resolution of its claims against Defendant Rigid Constructors, LLC ("Rigid") in binding arbitration before JAMS in King County, Washington. The parties' Corporate Account Agreement (the "Corporate Account Agreement") at §23.3 expressly preserves each party's right to "seek urgent injunctive or declaratory relief from a court of appropriate jurisdiction in respect of a Dispute or any matter arising under this Corporate Account Agreement." *Id*.

2. Rigid owes Finvari $268,431.67 in unpaid charges under the parties' Corporate Account Agreement. Over the past three months, Rigid has refused to pay, refused to communicate, concealed a 2025 financial restatement, and affirmatively directed its bank to reject authorized ACH debits as "unauthorized." This pattern of conduct, coupled with departing personnel and obvious financial distress, creates an imminent risk that Rigid will dissipate or conceal assets before an arbitration award can be entered. Finvari seeks a temporary restraining order and preliminary injunction to prevent that outcome.

3. In addition to the urgent injunctive relief authorized by §23.3 of the Corporate Account Agreement, Finvari seeks, to the extent necessary or appropriate, prejudgment attachment or other provisional relief under Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 64 and Revised Code of Washington ("RCW") Chapter 6.25 to preserve property sufficient to satisfy any judgment, order, or arbitration award entered in Finvari's favor.

## THE PARTIES

4. Plaintiff Finvari, Inc. is a Delaware corporation with its principal place of business at 1100 NE Campus Parkway, Suite 200, Seattle, WA 98195. Finvari administers the

Finvari Card Program, under which cards are issued by Sutton Bank, an Ohio state-chartered bank and Member FDIC, pursuant to a Mastercard license.

5. Defendant Rigid Constructors, LLC is a limited liability company with its principal place of business at 7616 Johnston St., Maurice, LA 70555. Known principals and contacts include Austin Settoon, Dallas Griffin, and Clay Collins.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) (diversity of citizenship). Finvari is a Delaware corporation with its principal place of business in Washington. On information and belief, Rigid is a Louisiana limited liability company whose members are citizens of Louisiana. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over Rigid and venue is proper in this District under §24.1 of the Corporate Account Agreement, which provides that "the federal and state courts sitting in the state of Washington shall have exclusive jurisdiction over any case arising hereunder" and that each party "waives any objection to venue and any objection based on forum non conveniens." *Id*.

8. Jurisdiction is also proper under 9 U.S.C. § 4 of the Federal Arbitration Act, which authorizes a party to petition a federal district court to compel arbitration under a written agreement. At this time Rigid has not refused or accepted arbitration. Finvari reserves the right to seek to compel arbitration should Rigid refuse.

## THE AGREEMENT AND ARBITRATION CLAUSE

9. The parties' rights and obligations are governed by the Agreement, defined collectively as the Corporate Account Agreement, the Finvari Card Program Agreement (the "Card Terms"), the User Terms, and the Application and related authorizations.

10. Section 23.1 of the Corporate Account Agreement requires that disputes, other than those principally arising from protection of intellectual property rights "be resolved by arbitration in King County, Washington before a single arbitrator." Section 23.2 provides that arbitration will be administered by JAMS under the JAMS Comprehensive Arbitration Rules and Procedures (because the amount in dispute exceeds $250,000.00). The Federal Arbitration Act (9 U.S.C. §§ 1–16) governs. *Id.*

11. Section 23.1 of the Corporate Account Agreement requires that, before filing a claim in arbitration, the parties "attempt to resolve the dispute informally by Notice and good faith discussions for 30 days." As defined in the Corporate Account Agreement, "Notice" means "any physical or electronic communication or legal notices related to this Corporate Account Agreement that are provided to or by you, Authorized Users, and/or Business Administrators through text or SMS, e-mail, your Business Account, or by other permitted means." *Id*. Finvari satisfied the Notice requirement on or about May 21, 2026, when it notified Rigid of the dispute. From no later than May 21, 2026, through late August 2026, Finvari engaged in extensive informal resolution efforts with Rigid, including phone calls, emails, and direct discussions with Rigid's employees, Dallas Griffin, Clay Collins, and Austin Settoon. These communications spanned more than three months. Rigid refused to resolve the dispute, refused to pay, and ultimately ceased all communication. On or about August 27, 2026, after these informal efforts

failed, a formal demand letter from Scale LLP, counsel for Finvari, was sent to Rigid via email. No response was received.

12. Section 23.3 expressly preserves each party's right to seek emergency judicial relief: "Nothing in this Corporate Account Agreement affects the rights of a party to seek urgent injunctive or declaratory relief from a court of appropriate jurisdiction in respect of a Dispute or any matter arising under this Corporate Account Agreement." *Id*.

13. Section 24.1 provides that the Corporate Account Agreement "is governed by and construed in accordance with federal law and the laws of the state of Washington (without reference to choice of law or conflicts of laws rules)." *Id*. The federal and state courts sitting in Washington have exclusive jurisdiction over any case arising under the Corporate Account Agreement. *Id.* As contemplated by the Corporate Account Agreement, such cases include intellectual property disputes, enforcing arbitration awards, compelling arbitration, and pursuit of injunctive or declaratory relief.

## STATEMENT OF FACTS

14. In or around April 2022, Rigid opened a Business Account with Finvari and agreed to the Agreement, including the Corporate Account Agreement, the Card Terms, and the Application.

15. As part of its Application, Rigid authorized Finvari to initiate ACH debits from Rigid's Linked Account at b1Bank (account ending in #26) in accordance with §8.2 of the Corporate Account Agreement and the ACH Authorization Agreement.

16. Rigid represented under §3.1 of the Corporate Account Agreement that all information submitted to Finvari was "truthful, accurate, current, and complete in all material respects." *Id*.

17. Through August 2026, Rigid utilized Finvari's card program for business expenses and accumulated charges on its Business Account.

18. On or about May 20, 2026, Rigid notified Finvari that the ACH corresponding to Finvari's statement for $194,688.49 would fail. The $194,688.49 payment was instead made via wire. In response, Finvari reached out to Dallas Griffin on May 21, 2026, asking for 2026 year-to-date financial statements and payment options for the billing cycle. A Dropbox link was provided to Rigid for it to upload the requested financial statements.

19. On May 21, 2026, the Parties met to discuss payment options for the billing cycle. On May 22, 2026, Finvari had a call with Dallas Griffin to discuss the status of Rigid's financials. During the call, Rigid, through Dallas Griffin, requested to postpone the discussion until May 26, 2026. On May 26, 2026, Finvari called Dallas Griffin but was forwarded to voicemail. The call was not returned. On May 29, 2026, Finvari sent an email to Dallas Griffin again requesting company financials and forwarding the previously provided Dropbox link. No response was received. On June 3, 2026, Finvari called Dallas Griffin again and left a voicemail asking about the status of financial statements. Again, no response was provided.

20. On June 10, 2026, Finvari spoke with Dallas Griffin and was informed that year-to-date financial statements through March 2026 and recent bank statements would be provided to Finvari by the following week. Dallas Griffin stated that 2025 audited financial statements would be available within about a month. Rigid did not provide the promised 2026 year-to-date financial statements or the recent bank statements to Finvari within the time frame provided.

21. On June 16, 2026, Finvari sent an email to Dallas Griffin following up on the June 10, 2026, conversation. No response was received.

22. On June 25, 2026, Finvari lowered Rigid's available spending limit from $400,000 to $200,000 due to Rigid's failure to provide the requested financial information.

23. Between July 10 and August 17, 2026, Finvari continued to contact Rigid regarding the unpaid balance. Rigid was largely unresponsive and never made a payment or produced the requested documents. During this time, Rigid reached their spending limit twice, leading Finvari to raise the limit in order to accommodate Rigid's business operations.

24. On or about August 17, 2026, Rigid disclosed for the first time that it was undergoing a restatement of its 2025 financial statements. Rigid had not previously reported this to Finvari, in violation of its ongoing obligations under §19.2(e) (requiring that Company Data provided to Finvari be "complete, accurate, and current" at all times) and §3.1 (requiring prompt written Notice of any updates, changes, or additions to Company Data) of the Corporate Account Agreement. Rigid stated that it would need 30-45 more days before the 2026 year-to-date financial statements would be available and promised that they would be provided to Finvari shortly thereafter.

25. On or about August 19, 2026, Finvari initiated a payment request for $116,849.96 corresponding to Finvari's August 15, 2026, statement to Rigid. On or about August 21, 2026, b1Bank returned Finvari's ACH debit with return code R29 ("Unauthorized"). Rigid had directed its bank to reject the debit as unauthorized, despite Rigid's express ACH authorization under §8.2 of the Corporate Account Agreement and the ACH Authorization Agreement.

26. Under §8.3 of the Corporate Account Agreement, when ACH collection fails, Rigid is obligated to "immediately pay all amounts owed as directed." *Id*. Rigid has made no such payment. Under §8.4 of the Corporate Account Agreement, revocation of ACH

authorization requires 30 days' advance Notice and immediate payment of all amounts owed. Rigid did not provide 30 days' advance Notice and has made no such payment.

27. On or about August 22, 2026, Finvari notified Rigid of the payment failure. Finvari again raised Rigid's spending limit in order to avoid declines on current purchases. Finvari also asked for a bank statement and evidence of Rigid's current balance. Instructions as to a wire transfer were provided along with a demand that payment be made on the following Monday, August 24, 2026.

28. On or about August 23, 2026, having not received an answer from Rigid, Finvari texted Dallas Griffin informing Rigid that no further spending limit increases would be approved. No response was received. On August 24, 2026, another call was made to Dallas Griffin, who responded with a text message stating, "On call with Austin – raising the flag issue now." On August 27, 2026, Dallas Griffin informed Finvari that "[w]e're not in a position to pay the balance this week but are expecting significant cash inflows from collections and a material transaction next week. We hope to be in a position to settle the balance at that time. We'll reach back out as these cash flows materialize." Subsequently, Rigid ceased communications.

29. On or about August 19, 2026, Finvari initiated a payment request for $136,215.80 corresponding to Finvari's August 22, 2026, statement to Rigid. On or about August 27, 2026, Finvari re-drafted its payment request for the August 15, 2026, statement. On or about August 28, 2026, b1Bank returned both of Finvari's ACH debits with return code R29 ("Unauthorized") bringing the total number of denied ACH debits to three. As previously noted, under §8.3 of the Corporate Account Agreement, when ACH collection fails, Rigid is obligated to "immediately pay all amounts owed as directed." *Id*. Rigid has made no such payment. Rigid's pattern of non-

payment and cessation of communication shows an intentional abrogation of Rigid's responsibilities under the Agreement.

30. On or about August 29, 2026, Finvari, through counsel, sent a formal pre-litigation settlement demand letter to Rigid demanding payment of $275,000.00 within ten days. As of the date of this Demand, no payment has been made, and no response has been provided.

31. Rigid's conduct constitutes multiple Defaults under §22.1 of the Corporate Account Agreement, including failure to remit payment (§22.1(i)), breach of obligations not remedied within 15 days (§22.1(ii)), material misrepresentation (§22.1(iii)), and material adverse change in financial condition (§22.1(v)). Under §22.2, all outstanding amounts are immediately due and payable.

## CLAIMS FOR RELIEF

## COUNT I

***(Emergency Injunctive Relief / Temporary Restraining Order)***

32. Plaintiff repeats and realleges each allegation set forth above as if fully stated here.

33. Finvari has a strong likelihood of success on the merits in the pending arbitration. The Corporate Account Agreement is clear and unambiguous. Rigid authorized ACH debits and assumed responsibility for all charges on its Business Account. Rigid failed to pay the amounts due, directed its bank to reject authorized payments, withheld required financial information, and concealed a financial restatement. These facts, largely documented by written communications, establish liability for breach of contract, Default under §22.1 of the Corporate Account Agreement, account stated, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and fraud or fraudulent misrepresentation.

34. Finvari will suffer irreparable harm absent emergency relief. Rigid is undergoing a 2025 financial restatement, indicating material financial instability. Rigid affirmatively instructed its bank to reject an authorized ACH debit, signaling willful efforts to avoid payment. Rather than complying with Finvari's demand to wire payment, Rigid maintained its instructions resulting in its bank rejecting two more authorized ACH debits. Rigid has systematically refused to communicate or provide financial documentation for months. Without an asset freeze, Rigid may dissipate or transfer assets beyond the reach of an eventual arbitration award, rendering any award uncollectible. Monetary damages alone are inadequate if Rigid becomes insolvent or conceals its assets before the arbitration concludes.

35. The balance of hardships favors Finvari. Finvari is owed $268,431.67 and faces the real prospect that Rigid will move or deplete its assets before an arbitration award issues. An asset freeze up to the amount in controversy merely preserves the status quo; it does not deprive Rigid of any asset to which it is entitled if the arbitration is resolved in its favor.

36. Injunctive relief serves the public interest. Courts routinely preserve assets pending resolution of disputes to ensure that prevailing parties can collect lawful awards. The Federal Arbitration Act reflects a strong federal policy favoring the enforcement of arbitration agreements, and courts have inherent authority to issue provisional relief in aid of arbitration.

## COUNT II

***(Preliminary Injunction)***

37. Plaintiff repeats and realleges each allegation set forth above as if fully stated here.

38. For the same reasons stated in Count I, Finvari is entitled to a preliminary injunction continuing the relief granted by the temporary restraining order through the conclusion of the pending JAMS arbitration.

39. The same four factors that support entry of a temporary restraining order support a preliminary injunction: likelihood of success on the merits, irreparable harm, balance of hardships favoring Finvari, and the public interest in preserving assets pending arbitration.

40. Unless restrained by order of this Court, Rigid will continue to dissipate, conceal, or transfer assets in a manner that will defeat Finvari's ability to collect on the arbitration award to which it is entitled.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Finvari, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant Rigid Constructors, LLC as follows:

(a) A temporary restraining order and preliminary injunction freezing Rigid's assets up to $268,431.67, plus reasonable attorneys' fees, late fees, and interest, pending final resolution of the JAMS arbitration;

(b) In the alternative, or in addition, issuance of a prejudgment writ of attachment or other provisional remedy under Fed. R. Civ. P. 64 and RCW Chapter 6.25 against Rigid's property in an amount sufficient to secure Finvari's claim, interest, fees, and costs;

(c) An order requiring Rigid to disclose, within 48 hours of entry, all bank accounts, financial accounts, and assets held by Rigid or any entity controlled by Rigid;

(d) An order requiring Rigid to preserve all documents, communications, and financial records related to its business operations and financial condition;

(e) Costs of suit incurred herein; and

(f) Such other and further relief as this Court deems just and proper.

Dated: September 23, 2026

**SCALE LLP**

By: _/s/ Jefferson Lin_

Jefferson Lin, WSBA No. 46354
Timothy Furin (pro hac vice pending)
Matthieu V. Hausig (pro hac vice pending)
Scale LLP
2261 Market Street, Suite 85604
San Francisco, CA 94114
Tel: (415) 735-5933
jlin@scalefirm.com
tfurin@scalefirm.com
mhausig@scalefirm.com

*Counsel for Plaintiff Finvari, Inc.*

## VERIFICATION

I am the Chief Financial Officer of Finvari, Inc. ("Finvari"), the Plaintiff in this action. I have personal knowledge of the facts set forth in this Complaint, or have acquired knowledge of such facts through my review of Finvari's business records maintained in the ordinary course of business.

I have read the foregoing Complaint for Emergency Equitable Relief and Application for Temporary Restraining Order and Preliminary Injunction, and know the contents thereof. The factual allegations set forth therein are true and correct to my personal knowledge, except as to those matters stated on information and belief, which I believe to be true based on information provided to me by other Finvari personnel, Finvari's business records, and communications with Rigid Constructors, LLC.

Immediate and irreparable injury, loss, or damage will result to Finvari before Defendant can be heard in opposition. The specific facts supporting this belief are set forth in the Complaint and in the Declaration of Joshua Cyphers filed concurrently herewith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 22, 2026.

Josh Cyphers

Joshua Cyphers

Chief Financial Officer, Finvari, Inc.